[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 128.]

TOLEDO BAR ASSOCIATION V. MCGILL.

[Cite as *Toledo Bar Assn. v. McGill*, 1999-Ohio-305.]

*Attorneys at law—Misconduct—Eighteen-month suspension with final twelve months stayed—Ten-year delay in processing client's claim against insurance companies which were ready to pay with proper releases.*

(No. 99-405—Submitted June 8, 1999—Decided October 13, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-83.

_____

{¶ 1} On October 13, 1997, relator, Toledo Bar Association, filed a complaint charging that respondent Michael E. McGill of Toledo, Ohio, Attorney Registration No. 0001839, violated several Disciplinary Rules in representing Verniece Snyder, née Skiles ("Verniece"), in a personal injury matter. Respondent answered, and the case was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that Verniece was injured in a one-car automobile accident on April 1, 1984. She was a passenger in an automobile driven by her future husband, Mark Snyder, when he drove off the side of a road into a culvert. American States Insurance Company ("American"), which represented Snyder, contacted Verniece and agreed to pay her medical bills. American also told Verniece that if she would sign a release after consulting an attorney, it would pay the policy limits of Snyder's insurance. Verniece contacted an attorney, who referred her to respondent. Respondent agreed to represent Verniece for no fee in relation to the limits of Snyder's policy with American and would charge her as a fee one-third of any recovery under the underinsured motorist provisions of her own policy with Motorists Insurance Companies ("Motorists").

**{¶ 3}** On March 3, 1986, respondent filed a suit against Snyder in the common pleas court, alleging damages of $250,000. An attorney hired by American filed an answer for Snyder and offered the policy limits in exchange for Verniece's release of Snyder. Also on March 3, 1986, respondent notified Motorists about Verniece's underinsured motorist claim, expressing a concern that a release of Snyder would jeopardize Verniece's claim against Motorists and Motorists' subrogation claim against Snyder. Motorists responded shortly thereafter, indicating it wished to verify the limits of American's policy and investigate Snyder's assets. It also suggested a meeting with respondent and American to "discuss possible avenues of settlement." Respondent agreed.

**{¶ 4}** In May and June 1987, respondent and Motorists exchanged correspondence in which Motorists declined to approve Verniece's release of Snyder, but, provided it received copies of Verniece's medical bills and verification of American's policy limits, agreed to her release of American only. During 1988 and 1989, Motorists repeatedly requested this information from respondent. Verniece claimed that during the same period, she telephoned respondent's office over one hundred times, only occasionally getting to speak to respondent, and he always told her that he was working on the case.

**{¶ 5}** In August 1990, respondent wrote to American's attorney, indicating that Verniece was prepared to sign the release. He wrote again to American's attorney in July and October 1993. The attorney responded, stating that the case against Snyder had been dismissed without prejudice and not refiled. The case, in fact, had been "noted for dismissal" in August 1988, but not dismissed. Verniece did sign the release in 1993, after which she called respondent's office repeatedly, seeking her settlement check. She wrote to him in September 1995 and in July 1996, but received no response. Finally, in November 1996, Verniece filed a grievance with relator.

**{¶ 6}** Verniece contacted another attorney, who within six months obtained

2

for her the limits of American's policy and $50,000 from Motorists.

{¶ 7} The panel found that respondent's conduct violated DR 6-101(A)(3) (neglecting an entrusted legal matter) and 7-101(A)(2) (failing to carry out a contract of employment). In mitigation, respondent testified that for five years beginning in 1990 there was an acrimonious breakup of his law partnership, involving a dispute about the real estate owned by the firm, and several lawsuits, including one against his wife. During this time he received a public reprimand, *Toledo Bar Assn. v. McGill* (1992), 64 Ohio St.3d 669, 597 N.E.2d 1104, for co-signing for client's loans, one of those clients being Verniece. These events severely depressed respondent to the point where he obtained psychological help.

{¶ 8} The panel recommended that respondent be suspended from the practice of law for one year, that six months of the year be stayed, and that respondent be placed on probation for an undetermined amount of time. The board adopted the findings and conclusions of the panel but recommended that respondent be suspended from the practice of law for eighteen months with the final twelve months stayed and respondent placed on probation.

———————————

*Harold M. Steinberg* and *Guy Barone,* for relator.

*James D. Godbey,* for respondent.

———————————

*Per Curiam.*

{¶ 9} We adopt the findings, conclusions, and recommendation of the board. Respondent's ten-year delay in processing his client's claim against insurance companies which were ready to pay with proper releases clearly violates the Disciplinary Rules, as found by the board. We are not moved by respondent's problems with his law partner, which began four years after he undertook to represent his client, a period of time within which the matter should have been resolved. Respondent is hereby suspended from the practice of law for eighteen

months, with the final twelve months stayed, and respondent will be on probation during that period. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., not participating.

———————————